REQUESTED BY: Senator Bernice Labedz Nebraska State Legislature State Capitol Building Lincoln, Nebraska 68509
Dear Senator Labedz:
You have asked us to reconsider Attorney General Opinion #71 (April 8, 1981) with special emphasis on PlannedParenthood of Central Missouri v. Danforth, 428 U.S. 52
(1976), and Maher v. Roe, 432 U.S. 464 (1977), insofar as they allow some regulation by the states during the first trimester of the pregnancy and allow abortions to be treated differently than other medical procedures.
In our earlier opinion we cited Roe v. Wade, 410 U.S. 113
(1973), and Doe v. Bolton, 410 U.S. 179 (1973), as establishing that abortion is a legitimate medical procedure, subject to limitations by the state for compelling state interests,i.e., the health of the mother after the first trimester and an interest in potential life after viability. Both causes emphasized that up to those points the abortion decision was inherently and primarily a medical decision.
Danforth was the `logical and anticipated corollary' to those two cases. It considered eight sections of a Missouri law dealing with abortions; it upheld four and found four invalid. One section it upheld required a woman to certify in writing, prior to submitting to an abortion during the first 12 weeks of pregnancy, that she consents to the procedure and that her consent is informed and freely given and is not the result of coercion.
The district court had upheld the provision, noting that the consent requirement did not single out the abortion procedure, but merely included it within the category of medical operations for which consent is required. The Supreme Court refrained from characterizing prior written consent to surgery as the universal practice of the medical profession. It emphasized that the decision to abort is an important and often a stressful one and it is desirable and imperative that it be made with full knowledge of its nature and consequences. It held it was constitutional for the state to require her prior written consent. However, it cautioned against defining `informed consent' so as to confine the attending physician in a straitjacket in the practice of his profession.
The Court in Danforth also upheld recordkeeping requirements covering abortions in the first trimester which were reasonably directed to preservation of maternal health and which properly respected the patient's confidentiality and privacy.
In Maher v. Roe, 432 U.S. 646 (1977), the Court held that the Constitution does not require a state participating in the Medicaid program to pay for nontherapeutic abortions when it pays for childbirth. (This was extended in Harrisv. McRae, 448 U.S. ___ (1980). The Court is that case held both the federal government and the states can encourage childbirth by paying for it but not paying for abortions even when they are medically necessary.)
The differing treatments for childbirth and abortion were considered in Maher in light of the Equal Protection Clause of the Fourteenth Amendment to see if the state legislation operated to the disadvantage of some suspect class or impinged upon a fundamental right protected by the Constitution or, if not, to see if the state legislation rationally furthered some legitimate articulated state purpose.
The Court held that the legislation did not operate to the disadvantage of a suspect class because financial need alone does not identify such a class for purposes of equal protection analysis.
The Court reiterated its holding in Wade that the Fourteenth Amendment afforded constitutional protection to a woman's decision to terminate her pregnancy and that the state's interest in the health of the pregnant woman justified state regulation related to that concern in the second trimester and that the state's interest in the potential life of the fetus at viability, usually in the third trimester, justifies prohibition with criminal penalties except where the life or health of the mother is threatened.
In concluding that the Connecticut regulation denying Medicaid benefits for nontherapeutic abortions in the first trimester of pregnancy did not impinge on the fundamental right recognized in Wade, the Court said:
 Our conclusion signals no retreat from Roe [v. Wade] or the cases applying it. There is a basic difference between direct state interference with a protected activity and state encouragement of an alternative activity consonant with legislative policy.
(Emphasis added.) Supra at 475. The Court likened a state encouraging childbirth instead of abortion by funding childbirth but not abortion to the state encouraging public education by funding it but not funding parochial education which it cannot prohibit.
In addition to recordkeeping and informed consent allowed during the first trimester, the Court has recently held in H. L. v. Matheson, 41 CCH S.Ct. Bull. p. B-1487 (March 23, 1981), that a state can require parental consultation prior to an abortion in the first trimester on an immature, dependent, unmarried child living at home. The court cited interests of the state in family integrity, protecting adolescents and the role of the parents in child rearing. However, the emphasis was on insuring that such child's decision to abort was made only with full knowledge of its nature and consequences.
Our conclusion in Attorney General Opinion #71 that both of the proposed amendments in LB 466 were probably unconstitutional was based primarily on state law, i.e., improper use of the police power to stifle legitimate business and improper classification not reasonably related to the purposes of the underlying legislation being amended. We suggested that there might also be a chilling of the exercise of constitutional rights. The financial encouragement of childbirth upheld in Maher and McRae and the insurance of informed consent upheld in Danforth and H.L. are not an endorsement of all classifications giving preferred status to medical procedures other than abortions. They do not change our earlier conclusion that the proposed amendments in LB 466 are probably unconstitutional.
Sincerely yours, PAUL L. DOUGLAS Attorney General Marilyn B. Hutchinson Assistant Attorney General